Estate of Robert A. Axelson, Deceased, Isabel K. Axelson and Arthur L. Jones, Executors v. Commissioner. Isabel M. Axelson v. Commissioner.
Estate of Robert A. Axelson v. Commissioner
Docket Nos. 6140, 6141.
United States Tax Court
1946 Tax Ct. Memo LEXIS 181; 5 T.C.M. (CCH) 414; T.C.M. (RIA) 46122; May 27, 1946
*181 James E. Bennett, Esq., and Arthur L. Jones, C.P.A., 1211 Mahoning Bank Bldg., Youngstown 3, Ohio, for the petitioners. Lawrence R. Bloomenthal, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases duly consolidated for trial, involve income tax of both petitioners for the calendar years 1940 and 1941. Deficiencies were determined as follows: Year
Petitioner
Amount
1940
Isabel M. Axelson
$ 1,959.04
1940
Estate of Robert A. Axelson
2,584.77
1941
Isabel M. Axelson
10,151.10
1941
Estate of Robert A. Axelson
10,347.55
The questions presented are (a) whether the petitioners' minor children were partners with them in the taxable years in the Federal Finance Co.; (b) whether the Commissioner erred in disallowing additions to a reserve for bad debts, in determining distributive income of Federal Finance Co.; and (c) whether the Commissioner erred in disallowing deduction of compensation paid by Federal Finance Co. to the two minor children and Marion E. Trueman, an adult child of the petitioner. A stipulation of facts was filed, which we adopt as a part of our findings of fact, setting forth, *182 with other facts found from evidence adduced only such parts thereof as deemed material to examination of the issues. Findings of Fact Robert A. Axelson, the original petitioner in docket No. 6140, (hereinafter sometimes referred to as a petitioner) died February 18, 1945, and the executors of his estate have been substituted. He resided until his death with his wife, Isabel M. (also known as Isabel K. and I.M.) Axelson, petitioner in docket No. 6141, in Youngstown, Ohio. Their returns for the taxable years were filed with the collector for the 18th district of Ohio. Facts as to Partnership The petitioners had three children, Marion E. Trueman, born July 2, 1915, and an adult at all times here involved, and two minor children, Mildred L. who attained the age of majority on March 15, 1941, and Robert K. Axelson who will attain the age of majority on November 28, 1946. The father and mother were since April 1, 1931, partners in equal shares, in a chattel loan and finance business called Federal Finance Co. After December 30, 1938, Marion E. Trueman was also a partner. The respondent does not question the partnership among the father, mother and daughter Marion. The father, Robert *183 A. Axelson, was the partner managing the business at all times until about the time of his death. The parents wished the children to become interested in and learn the business, and later to become a part of it, and the children, during high school and college (military school as to the son) vacations, worked in the Federal Finance Co. office. After graduation from college the two girls began to work full time in the business. Marion E. Trueman stopped work in April 1941. A child was born to her in August 1941. She has helped at times, when help was scarce, since then. On December 30, 1938, each of the parents gave each child $5,000 of their capital interest in the partnership. The gift to Marion E. Trueman was absolute, those to Mildred and Robert K. being in irrevocable trusts, their mother being trustee. Each trust provided, in pertinent part, that the trustee should, during minority of each child, hold and manage the partnership interest given. and pay partnership income to the children. or retain it for accumulation or investment, or use it for the welfare, comfort and education of the child-beneficiary, all in her discretion; that at majority of the child the trust should cease, *184 and the partnership interest and accumulated income be paid to the child; and that in case of death of either or both child-beneficiaries the interest should go in equal shares to the survivor or survivors of the three children. On December 30, 1938, the parents individually, Marion E. Trueman, and the mother as trustee for Mildred and Robert, executed "Articles of Partnership," setting forth, so far as here material, that the parents had been in the chattel loan and finance business as Federal Finance Co., that Marion E. Trueman, and Isabel M. Axelson as trustee for Mildred L. and Robert K. have acquired partnership interests by gift; that all are desirous of continuing business under new articles; that the business shall be in charge of Robert A. Axelson as before, he to have full and complete authority to manage and carry it on; that at the end of each year a full accounting shall be made and the interest of each shown and net profits credited to each; that the net profits will be apportioned among the parties in proportion to capital interest, and losses borne in the same proportions; and that each partner shall each year be entitled to draw from profit from the business such *185 sums as determined by Robert A. Axelson, considering the needs of the business and its sound operation and expansion; and that death of any party shall not dissolve the partnership, but it shall be carried on by the survivors. Certificate of partnership was filed with the Clerk of the Common Pleas Court of Mahoning County, Ohio, showing all the above named as partners, the mother as trustee for the minors. On January 2, 1939, the father and mother each gave each child $4,000 additional capital interest, absolute to Marion E. Trueman, and to the mother in trust for the two minors, as on December 30, 1938. Again on January 2, 1940, $8,000 was credited to each child's partnership account on the journal of Federal Finance Co., and on January 29, 1940, $29.09 was added to the partnership account of each of Robert K. and Mildred, and $188.42 to that of Marion E. Trueman. On January 2, 1941, $8,000 and on June 27, 1941, $4,763.08 was credited to each minor's partnership account on the journal of Federal Finance Co. Entries were made on the journal for December 1938, and for January 1939, to record the gifts to the children on those dates as above described, they being referred to therein *186 as irrevocable gifts of partnership interest, under the partnership agreement. Profits of the business were added to the capital accounts of each of Mildred and Robert on the partnership books, as follows: $2,570.91, $3,636.92, $6,156.94 - total $12,364.77. The following entries on the books of Federal Finance Co. relate to the distribution of profits for 1939, 1940, and 1941: Journal - December, 1939 - Pages 109-110 Debits
Credits
Gen. Ledger
Gen. Ledger
$38,200.78
Profit and Loss Year 1939
Partnership - R. A. Axelson
$15,123.69
Partnership - I. M. Axelson
15,123.69
Partnership - Marion E. Trueman
2,811.58
Partnership - Mildred L. Axelson
2,570.91
Partnership - Robert K. Axelson
2,570.91
(To Transfer Profit and Loss a/c to Partnership accounts)
Profit distributed on basis of average
Investment as shown on next page
Journal - December, 1940 - Page 154 Debits
Credits
Gen. Ledger
Gen. Ledger
Profit and Loss - Year 1940.
Profit of $40,749.78 transferred to Partnership as follows: R. A. Axelson $14,523.22
I. M. Axelson 14,523.22
Marion E. Trueman 4,429.50
Robert K. Axelson 3,636.92
Mildred L. Axelson 3,636.92
*187 Journal - December, 1941 - Page 120 Profit and Loss (Year 1941)
Profit $56,074.16 transferred to Partnership
Partnership - R. A. Axelson
$17,887.66
Partnership - I. M. Axelson
19,283.90
Partnership - Marion E. Trueman
6,588.72
Partnership - Mildred L. Axelson
6,156.94
Partnership - Robert K. Axelson
6,156.94
For the years 1940 and 1941, the books of Federal Finance Co. indicate no withdrawals of capital or profit by any of the purported partners of the firm except certain withdrawals made by Robert A. Axelson. The respective capital interest of the alleged partners is stated on the books of Federal Finance Co. as follows: 12-31-40
Capital
12-31-41
Capital Accounts
Distributive
Accounts
Distributive
Dec. 31,
Dec. 31,
Shares
Dec. 31,
Shares
'39
'40
'41
Robert A. Axelson
$109,123.69
$128,723.22
35.640%
$138,887.66
31.90%
Isable M. Axelson
109,123.69
128,723.22
35.640%
154,283.90
34.39%
Marion E. Trueman
25,811.58
40,429.50
10.870%
58,588.72
11.75%
Mildred L. Axelson
20,570.91
32,236.92
8,925%
51,156.94
10.98%
Robert K. Axelson
20,570.91
32,236.92
8.925%
51,156.94
10.98%
TOTAL NET WORTH
$285,200.78
$362,349.78
100.000%
$454,074.16
100.00,
*188 The net profits of the Federal Finance Co. as shown by its books for the years 1934 to 1939, inclusive, are as follows: Year 1934
$16,119.72
Year 1935
24,589.46
Year 1936
27,275.13
Year 1937
33,062.50
Year 1938
42,849.25
Year 1939
38,200.78
In December 1938, Robert K. was about 14 years of age, and Mildred L. 18 years of age. Both were then in school. Mildred attended college during 1940-1941, and he attended school. They worked in the Federal Finance Co. office during vacations. They had more privileges than other help and could leave when they wished. The Commissioner in the deficiency notice determined that Robert K. and Mildred "were not partners in the Federal Finance Company * * * by reason of purported gifts to them in trust or otherwise and that the income of the trusts created by you for their benefit is taxable" to the petitioners. Facts as to Addition to Reserve Federal Finance Co. reported net income of $44,949.78, and additions to bad debt reserve of $11,588.90 for 1940 and for 1941 reported net income of $63,774.16 and additions to bad debt reserve of $22,750.10. The Commissioner in the deficiency notice increased net income as *189 reported for 1940 by disallowing deduction of $5,222.98 as reserve for bad debts less bad debts recovered, $1,591.69, net adjustment $3,621.29 and for 1941 by disallowing deduction of $15,357.23 as reserve for bad debts, less $1,682.10 bad debts recovered. The reserve for bad debts for 1940, as determined by the company and by respondent, is as follows: Federal
Finance
Respond-
Company
ent
Balance of Reserve
1/1/40
$ 5,385.40
$ 5,385.40
Miscellaneous credits
574.80
Additions in 1940
11,588.90
6,365.92
Recoveries on Bad Debts
in 1940
1,591.69
Total
$17,549.10
$13,343.01
Charges to Reserve in
1940
6,406.90
6,406.90
Balance of Reserve
12/31/40
$11,142.20
$ 6,936.11
Reserve for bad debts at December 31, 1940, of $11,142.20, as used by Federal Finance Co. is 1.52 per cent of outstanding receivables aggregating $731,356.06 and the reserve of $6,936.11 as used by respondent is 1 per cent of receivables aggregating $693,611.35 as at December 31, 1940. The outstanding receivables of Federal Finance Co. as at December 31, 1940, are as follows: Dealers Retail Loans
$520,994.20
Loans Receivable
172,617.15
$693,611.35
Floor Plan Loans (not included
by respondent
37,744.71
TOTAL
$731,356.06
*190 Federal Finance Co. has treated 1940 recoveries on bad debts as an addition to taxable net income and respondent treats such recoveries as an addition to reserve for bad debts. The reserve for bad debts for 1941, as determined by the company, and by the respondent, is as follows: Federal
Finance
Respond-
Company
ent
Balance of Reserve 1/1/41
$11,142.20
$ 6,936.11
Miscellaneous Credits
483.93
Additions in 1941
22,750.10
7,392.87
Recoveries in 1941
1,682.10
Total
$34,376.23
$16,011.08
Charges to Reserve
in 1941
6,607.34
6,607.34
Balance of Reserve
12/31/41
$27,768.89
$ 9,403.74
Reserve for bad debts at December 31, 1941, of $27,768.89 as used by Federal Finance Co. is 2.67 per cent of outstanding receivables aggregating $1,036,162.76 and the reserve of $9,403.74 as used by respondent is 1 per cent of receivables aggregating $940,374.07 as at December 31, 1941. The outstanding receivables of Federal Finance Co. as at December 31, 1941, are as follows: Dealers Retail Loans
$ 765,580.71
Loans Receivable
174,793.36
$ 940,374.07
Floor Plan Loans (not included
by Respondent)
95,788.69
TOTAL
$1,036,162.76
*191 Federal Finance Co. has treated 1941 recoveries on bad debts as addition to taxable net income and respondent treats such recoveries as addition to reserve for bad debts. The condition of the bad debts charged off, additions to reserve, outstanding receivables, and new business written by the company, is shown in the following table: RESERVE FOR DOUBTFUL ACCOUNTS Bad Debts
Additions
Year
Charged Off
To Reserve
1942
$16,782.21
$13,592.01
1943
6,475.84
10,714.85
1944
9,145.88
8,721.18
OUTSTANDING RECEIVABLES Loans
Notes
Date
Receivable
Receivable
Totals
Dec. 31, 1942
$175,308.72
$293,217.53
$468,526.25
Dec. 31, 1943
186,093.29
147,678.89
333,772.18
Dec. 31, 1944
189,494.36
142,069.59
331,563.95
NEW BUSINESS WRITTEN Loans
Notes
Year
Receivable
Receivable
Totals
1940
$345,722.19
$ 746,627.07
$1,092,349.26
1941
274,407.05
1,158,964.43
1,433,371.48
1942
301,394.14
364,252.98
665,647.12
1943
379,502.90
272,155.65
651,658.55
1944
420,459.01
231,979.98
652,438.99
The above figures do not include Floor Plan Loans. Federal Finance Company's average loss through *192 bad debts was 0.9185 per cent of new business written based on the three calendar years 1940, 1941, and 1942, and was 0.9752 per cent of new business written based on the five calendar years, 1940-1944, inclusive. The Federal Finance Co. made three classes of loans, classified as follows: (a) Loans receivable, consisting of small loans made to individuals subject to rules and regulations of the State of Ohio; (b) notes receivable, being notes purchased principally from automobile dealers and based upon automobile sales and the agreements to pay; (c) floor plan loans, being wholesale loans to automobile dealers for purchase of cars from factories, and secured by pledge of automobile. Federal Finance Co. has had no losses from floor plan loans. "Loans receivable" outstanding on January 31, 1940, were $61,990.51, consisting of 540 loans, an average of $114.79; on January 31, 1941, they averaged $162.23; on November 30, 1941, they averaged $169.07. "Notes receivable" on January 31, 1940, were $453,449.49, consisting of 1,758 loans, an average of $257.93; on January 31, 1941, the average was $343.14, and on November 30, 1941, it was $314.76. The losses of Federal Finance Co. through *193 bad debts were 0.9185 per cent of new business written based on the years 1940, 1941, and 1942, and was 0.9752 per cent of new business written, based on 1940-1944, inclusive. The average life of notes receivable purchased in 1940 was about 14 1/3 months; and the average life of "loans receivable" purchased in the same year was about 12 months. The average life as to new business in 1941 was: "notes receivable," about 14 months; "loans receivable," 13 1/2 months. Federal Finance Company's experience ratio of bad debts charged off to aggregate liquidation of loans for the years 1940 to 1942, inclusive, is an average of 0.91853 per cent; for 1940-1944, inclusive, the average ratio of bad debts charged off to liquidation of loans is 0.9952 per cent. Facts as to Salary Deductions The distributions of net income for 1940 as determined by the company and the respondent, showing salaries paid, are as follows: FEDERAL FINANCE COMPANY - DETERMINATION
Remaining Net Income
Salary
Amounts
Per Cent
Total
R. A. Axelson
$ $14,523.22
35.6409%
$14,523.22
I. M. Axelson
14,523.22
35.6409%
14,523.22
Marion E. Trueman
4,200.00
4,429.50
10.8670%
8,629.50
Mildred L. Axelson
3,636.92
8.9256%
3,636.92
Robert K. Axelson
3,636.92
8,9256%
3,636.92
TOTALS
$4,200.00
$40,749.78
100.0000%
$44,949.78
*194 RESPONDENT'S DETERMINATION
Remaining Net Income
Salary
Amounts
Per Cent
Total
R. A. Axelson
$ $22,118.91
45.5299%
$22,118.91
I. M. Axelson
22,118.91
45.5299%
22,118.91
Marion E. Trueman
4,343.25
8.9402%
4,343.25
Mildred L. Axelson
Robert K. Axelson
TOTALS
$ $48,581.07
100.0000%
$48,58107
Federal Finance Co. allowed Marion E. Trueman, a partner, salary in the amount of $4,200.00 for the year 1940 and treated such amount as a deduction from distributable net income, but respondent disallows any salary or compensation to partners as a deduction from distributable net income of Federal Finance Co. for the year 1940. For 1941 the determination of each, as to distribution of net income, is as follows: FEDERAL FINANCE COMPANY
Salary
Insurance
F.F.C.
Per Cent
F.F. CO.
Income
Total
R. A. Axelson
$ 31.90%
$17,887.66
$ 5,614.00
$23,501.66
I. M. Axelson
34.39%
19,283.90
6,258.20
25,542.10
Marion E. Trueman
5,000.00
11.75%
6,588.72
2,413.00
14,001.72
Mildred L. Axelson
1,650.00
10.98%
6,156.94
2,087.90
9,894.84
Robert K. Axelson
1,050.00
10.98%
6,156.94
2,087.90
9,294.84
$7,700.00
100.00%
$56,074.16
$18,461.00
$82,235.16
*195 RESPONDENT
Per Cent
Amount
R. A. Axelson
43.9450%
$41,884.02
I. M. Axelson
46.5972%
44,411.83
Marion E. Trueman
9.4578%
9,014.24
Mildred L. Axelson
Robert K. Axelson
100.0000%
$95,310.09
Federal Finance Co. allowed Marion E. Trueman, Mildred L. Axelson, and Robert K. Axelson aggregate amounts of $7,700.00 as salary for the year 1941, and treated such amounts as a deduction from distributable net income, but respondent disallows any salary or compensation to Marion E. Trueman for the year 1941 and allows salary of $375.00 to Mildred L. Axelson and $225.00 to Robert K. Axelson. Opinion 1. We first examine the question whether the children, Robert K., a minor throughout both taxable years 1940 and 1941, and Mildred, a minor until March 15, 1941, should be considered partners with their parents and their older sister Marion. A great many cases have been cited by both parties, but only the petitioners' reply brief was filed after the recent decisions of the Supreme Court in Commissioner v. Tower, 327 U.S. 280 (Feb. 25, 1946), and Lusthaus v. Commissioner, 327 U.S. 293, decided the same date. We regard it unnecessary *196 to discuss the various cases cited. We have here a father and mother, with an established business, making gifts of partnership interests therein to minors. The minors, during vacations from school and college, contributed some services, for which they received compensation. They contributed no capital, except the subject matter of the gifts. In short, they contributed no capital originating with them, contributed services of only minor character, and nothing to the management or control of the business - for the partnership agreement specifically provides not only that the father shall "manage and carry on said business and do all things necessary and incidental to the operation thereof," but also that the partners could draw only such profits as he "shall determine, considering the needs of said business and its sound operation and expansion." Yet, in the Tower case we find the Court stating as to a wife-partner: * * * If she either invests capital originating with her, or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C. §§ 181, *197 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws. [Italics supplied.] When we further consider here the fact that the children never received distribution of the partnesrhip income ascribed to them on the books, that is, that there was no actual withdrawal by them, the fact that the minors appear to have done no more, in the way of work in the partnership, than parents might reasonably require of them, even if there was no partnership, the rather obvious intent to divide income involved in payments to the children of salaries of $1,650 to Mildred L. and $1,050 to Robert K., though it is herein stipulated that the reasonable value of their services was $375 to Mildred and $225 to Robert, for 1941 (and mothing *198 in 1940), the fact that Marion was allowed $4,200 in 1940 and $5,000 in 1941, as against a stipulation that $110 a month was a reasonable salary, and she worked only about three months in 1941, and the fact that neither father nor mother drew salaries, it becomes apparent, we think, that we may not reasonably sustain the position of the petitioners in this regard. That the parents wished the children to be trained for the future of the business is urged, and is not without some weight - though shortly before Marion E. Trueman, the older daughter, became a mother, she ceased to work in the business, and has since worked therein only when they were shorthanded. Yet, in our opinion, this does not, compared with the other facts presented, establish that reality of partnership which is necesary, when a family relation is to be closely scrutinized, as has often been said, nor convince that division of family income was not the primary object. That Marion, the older daughter, had been recognized by the Commissioner as a partner, we consider of no material importance or assistance in this case. In the light of the Tower and Lusthaus cases, we think the entire aspect of the arrangement is *199 that no material change, except in the division of the family income (not even divided except upon the books) was effected by the "partnership" and trust; and we conclude and hold that the Commissioner did not err in disregarding the two minors as "partners" in taxation of the income. 2. It follows from our conclusion above that moneys paid to the two children for services may not be denied because of their being partners, and since the parties have agreed that $225 in 1941, and nothing in 1940, for Robert, and $375 in 1941, and nothing in 1940, for Mildred, are reasonable amounts of compensation, those amounts are approved as deductions for expense in 1941. As to Marion, the stipulation as to reasonableness was subject to the question as to whether such a partner can be allowed a salary. There is no proof of any agreement or article of partnership providing for payment of salaries to partners. In general, they are required to contribute reasonable services without compensation, and may therefore, in the absence of agreement for compensation, not receive for such services. 47 C.J. 786. Ohio cases are cited for the text. Though it is also true, as argued by the petitioners, citing *200 47 C.J. 787, that agreement need not be express, we find nothing in the record here to justify a deduction of a salary to Marion E. Trueman. The family relationship, the large amounts allowed against much smaller earnings, indicate unreality in the arrangement, and lack of agreement, express or implied, is not overcome. No error is found in disallowance of the salary to Marion E. Trueman. 3. This leaves for consideration the question of the proper amount of deduction for reserve for bad debt. Though originally claiming $11,588.90 for 1940 and $22,750.10 for 1941, as against the Commissioner's allowance of $6,365.92 and $7,392.87, respectively, the petitioners now ask for $10,923.49 for 1940 and $14,333.71 for 1941. These figures are 1 per cent of gross new business in loans receivable and notes receivable. The Commissioner's figures are 1 per cent of outstanding notes receivable and loans receivable. The question is one of fact. We have considered the experience of the petitioners not only in the taxable years, but the later years including 1944, for indications as to what is a fair allowance for reserve. Regulations 103, section 19.23(k)-5. The determination has been made that *201 1 per cent of outstanding loans receivable and notes receivable is a fair reserve, and it is incumbent upon the petitioners to prove otherwise. Imperial Type Metal Co. v. Commissioner, 106 Fed. (2d) 302. In our opinion such showing has not been made. The question being one of fact and the facts being set forth above (though petitioners requested findings of only a small portion thereof), we need not repeat them in detail here. Suffice it to say that the petitioners' idea of a fair reserve being based on gross new business in loans receivable and notes receivable, instead of on the amount of such notes receivable and loans receivable outstanding at the end of the year, does not convince us that the former method produces a fairer result in a reserve than does the latter. We have extended our examination even to 1944 to determine this question. Among other data and factors considered are: The petitioners' average loss of Federal Finance Co. through bad debts was 0.9185 per cent of new business written based on 1940-1942, and based on 1940-1944, inclusive, was 0.9752 per cent of new business written. The ratio of bad debts charged off to aggregate liquidation of loans, on *202 petitioners' own computation, is an average of 0.91853 per cent, for 1940-1942, inclusive, and for 1940-1944, inclusive, is 0.9952 per cent. Considering all of the facts submitted, we conclude, and hold, that error has not been shown in the Commissioner's determination that one per cent of loans receivable and notes receivable is a fair addition to reserve for the taxable years. Decision will be entered under Rule 50.